# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MIGUEL STEVEN VIRRUELA LOPEZ, | : | |
| Petitioner, | : | Case No. 3:04CV047 |
| vs. | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Sharon L. Ovington |
| ANTHONY J. BRIGANO, Warden,[1] | : | |
| Lebanon Correctional Institution, | | |
| | : | |
| Respondent. | | |
| | : | |

# REPORT AND RECOMMENDATIONS[2]

## I.    INTRODUCTION

On May 24, 1999, Petitioner Miguel Steven Virruela Lopez pled guilty to several

criminal offenses in the Greene County, Ohio Court of Common Pleas.  The trial court accepted

Lopez's guilty pleas, thus finding him guilty of conspiracy to commit aggravated murder with a

firearm specification, conspiracy to commit murder, complicity in kidnapping, and complicity in

obstruction of justice.  (Doc. #9, Exhibit 4).  The trial court sentenced Lopez to a total of twenty

years of imprisonment.  *Id*., Exh. 5.  During these state court proceedings, Lopez was represented

by counsel.

As part of his plea agreement, Lopez agreed in part "to testify truthfully at any

---

[1]  The present Warden of the Lebanon Correctional Institution is Ernie Moore, and he is therefore the proper party Respondent in this case.  *See* http://www.drc.state.oh.us/.  The case caption shall remain the same for consistency of docketing.

[2]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

subsequent proceeding involving any other defendant or accomplice...." *Id.*, Exh. 4 at 5.  Soon after pleading guilty, and before sentencing, Lopez changed his mind about his plea agreement.  His trial counsel, however, declined to file a motion to withdraw Lopez's guilty plea.  Because of this, Lopez filed a *pro se* motion to withdraw his guilty plea.  *Id.*, Exh. 9 at 4.

The trial court appointed new counsel to represent Lopez and held a hearing on his motion to withdraw his guilty plea.  Lopez testified during the hearing that he was not willing to testify against one of his co-defendants.  *Id.* at 4-5; *see* Exh. 2 at *1-*2.

The trial court denied Lopez's motion to withdraw his guilty plea after concluding that he "had tendered his plea voluntarily, with an understanding of the terms of the bargain."  *Id.*, Exh. 2 at *6.

Lopez then pursued various challenges to his convictions in the Ohio courts.  He did not, however, succeed in obtaining relief from his guilty pleas.

Lopez – a Mexican national and now an inmate at the Lebanon Correctional Institution in Lebanon, Ohio – brings the instant case *pro se* seeking a Writ of Habeas Corpus under 28 U.S.C. §2254.  Lopez raises ten Grounds for Relief claiming, in part, that his guilty plea was involuntary, unintelligent, and unknowing due to the insufficiency of the indictment, and that the trial court violated his rights under the Vienna Convention on Consular Relations.  *See* Doc. #13 at 2; *see also* Doc. #2.

This case is before the Court upon Lopez's Petition (Doc. #2), Respondent's Answer (Doc. #9), Lopez's Reply (Doc. # 13), and the record as a whole.  The Court previously granted Lopez's Motion to Include Additional Case Law (Doc. #s 22, 23), and directed Respondent to file a Memorandum, which is also before the Court (Doc. #24).

## II.    PROCEDURAL BACKGROUND

### A.    Lopez's Direct Appeal

Following the trial court's denial of his motion to withdraw guilty plea and his sentencing, Lopez filed a timely direct appeal of his convictions in the Ohio Court of Appeals raising five Assignments of Error:

I.    The trial court abused its discretion when it failed to grant [Lopez's] motion to withdraw his pleas prior to sentencing.

II:   The court abused its discretion when it failed to rule on [Lopez's] renewed motion to vacate his pleas prior to sentencing.

III:  [Lopez's] plea was not voluntary as the state continued to negotiate a better offer even after the plea agreement was put on the record.

IV:   [Lopez] was denied effective assistance of counsel when the first trial attorney failed to file a motion to withdraw [Lopez's] guilty plea.

V:    The sentencing of [Lopez] was improper because the Court is required to give reasons for the sentence when it has handed down consecutive sentences or a combination of sentences equal to the maximum for the most serious offense.

(Doc. #9, Exh. 9 at 2).

On October 13, 2000, the Ohio Court of Appeals rejected Lopez's first through fourth assignments of error but agreed with Lopez's fifth assignment of error.  The Court of Appeals specifically held, "a trial court must put on the record its reasons for making the requisite statutory findings whenever it imposes a sentence, pursuant to [Ohio Rev. Code §]2929.19(B)(2)(e), that equals or exceeds the maximum sentence that could have been imposed for the offense of the highest degree of which the defendant is convicted."  (Doc. #9, Exh. 11 at 14).  The Ohio Court of Appeals remanded the case to the trial court for resentencing.  At this time, Lopez did not file an appeal in the Ohio Supreme Court.

3

On remand, the trial court resentenced Lopez to a total prison term of twenty years.  *Id.*, Exh. 6.  In doing so, the trial court made specific findings pursuant to Ohio's sentencing statutes. *See id.*

Several years later, on February 4, 2004, Lopez filed a *pro se* motion for delayed direct appeal in the Ohio Supreme Court seeking to challenge the Ohio Court of Appeals' October 13, 2000 decision.  (Doc. #9, Exh. 24).  The Ohio Supreme Court denied Lopez's application and dismissed his case on March 24, 2004.  *Id.*, Exh. 27.

**B.      Lopez's Rule 26(B) Proceedings**

Rule 26(B) of the Ohio Rules of Appellate Procedure provided Lopez with a "specialized type of postconviction process" by which he could raise a claim that his appellate counsel had provided constitutionally ineffective assistance in the Ohio Court of Appeals.  *See Morgan v. Eads*, 104 Ohio St.3d 142, 143 (2004).

Lopez filed Rule 26(B) Application in the Ohio Court of Appeals on November 1, 2001, asserting ineffective assistance of appellate counsel due to counsel's failure to raise seven assignments of error.  (Doc. #9, Exhs. 12(A), 12(B)).

Upon its initial review of Lopez's Rule 26(B) application, the Ohio Court of Appeals agreed that good cause existed for its tardiness.[3]  (Doc. #9, Exh. 14).  The Ohio Court of Appeals therefore reached the merits of his assignments of errors, finding five without merit.  The remaining two assignments of error, according to the Ohio Court of Appeals, "are of sufficient merit that his appellate counsel should have raised them."  (Doc. #9, Exh. 14 at 3, 8-9).  As a

_____

[3]  Rule 26(B) required Lopez to file his Rule 26(B) application within ninety days of October 13, 2000, the date of the Ohio Court of Appeals' decision on direct appeal.  Because Lopez's Rule 26(B) application was untimely, Rule 26(B)(1) required him to show good cause for his late filing.

result, Lopez's appeal was reopened for further consideration of the following two proposed assignments of error:

> V.   The trial court erred when it failed to advise the accused of his rights under Article 36 of the Vienna Convention on Consular Relations.

> VI.  [Lopez] was denied his rights under Article 36 of the Vienna Convention on Consular Relations (1) to have the assistance of Mexican consul at every stage of the proceedings and (2) to be informed by the arresting authorities of his right [to the assistance of the Mexican consul] without delay when he was arrested and taken into custody.

(Doc. #9, Exh. 14 at 6-9). The Ohio Court of Appeals appointed new appellate counsel for Lopez and directed new counsel to "frame one or more assignments of error dealing with the issues raised in Lopez's proposed fifth and sixth assignments of error." *Id*. at 9.

Further briefing by Lopez's new appellate counsel and by attorneys for the State of Ohio led the Ohio Court of Appeals to determine that it should reach the merits of the following assignments of error:

> I.   The trial court erred when it failed to inform [Lopez] that he had a right to consult with consular officials from Mexico pursuant to rights guaranteed by the Vienna Convention on Consular Relations... because [Lopez] was a Mexican national.

> II.  The trial court erred when it found [Lopez] guilty and sentenced him on counts II and IV of the indictment, alleging a conspiracy, when such counts were fatally defective since they state no specific overt act in furtherance of the alleged conspiracy.

(Doc. #9, Exh. 18 at 3-5). On July 25, 2003, for reasons to be discussed below, *supra*, §III(C), the Ohio Court of Appeals overruled these assignments of error as meritless and dismissed Lopez's appeal. *Id*. at 4-6.

Lopez then pursued a *pro se* appeal in the Ohio Supreme Court reiterating as propositions of law the same claims he had raised in his *pro se* Rule 26(B) Application in the Ohio Court of

Appeals.  *See* Doc. #9, Exh. 20.  By a cursory Entry filed on November 5, 2003, the Ohio Supreme Court denied Lopez leave to appeal and dismissed his case.  (Doc. #9, Exh. 23).  This ended Lopez's Rule 26(B) proceedings.

C.  **Lopez's State Habeas Action**

On March 8, 2002, while Lopez's Rule 26(B) application was pending in the Ohio Court of Appeals, Lopez unsuccessfully sought state habeas corpus relief first in the Warren County Court of Common Pleas, then in the Ohio Court of Appeals.  (Doc. #9, Exhs. 28, 29).

Lopez argued that the trial court lacked jurisdiction to sentence him on a conspiracy charge because the indictment failed to include an allegation that he had committed an overt act in support of the conspiracy.  (Doc. #9, Exh. 28).  Both courts rejected this claim.  *Id*.  The Ohio Court of Appeals explained, "Habeas corpus is not available to challenge either the validity or sufficiency of an indictment....  Since the validity or sufficiency of the indictment could have been raised on direct appeal, the trial court correctly denied [Lopez's] petition for habeas corpus."  *Id*.

Lopez did not appeal the denial of his state habeas petition in the Ohio Supreme Court. *See* Doc. # 9 at 7.

6

III.    DISCUSSION

A.    **Procedural Default and Waiver**

Respondent contends that Lopez has waived all but his Tenth Ground for Relief for purposes of federal habeas review due to his procedural defaults in the Ohio courts.  Lopez contends, for various reasons, that his claims are not procedurally defaulted.  (Doc. #13).

**1.**
**Applicable Law**

To obtain federal habeas review, the record must show that Lopez properly raised his federal constitutional claims in the Ohio courts pursuant to Ohio's adequate and independent procedural rules.  *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004)[4]; *see also Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing in part *Coleman v. Thompson,* 501 U.S. 722, 749 (1991)); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  If Lopez did not follow Ohio's adequate and independent rules of procedure and the Ohio courts enforced those rules against him, then his procedural default may result in a waiver of one or more of his claims for purposes of federal habeas review.  *See Bonilla*, 370 F.3d at 497; *see also Buell*, 274 F.3d at 349.

Only two limited situations excuse a procedural default:  (1) if a petitioner shows cause and prejudice, *Burton v. Renico*, 391 F.3d 764, 773 (6th Cir. 2004)(and cases cited therein), or (2) if the petitioner shows a fundamental miscarriage of justice will result from the failure to consider the merits of the claims.  *See Coleman* 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Monzo v. Edwards*, 281 F.3d 568, 575 (6th Cir. 2002).

---

[4]  Coincidentally, the petitioner in *Bonilla* was involved in the same events that led to Lopez's criminal convictions.  *See* Doc. #9, Exh. 14 at 3-4.  The United States Supreme Court declined to review Bonilla's case.  543 U.S. 989.

**2.**
**Failure to File Timely Direct**
**Appeal in the Ohio Supreme Court**

Lopez's First through Fifth Grounds for Relief are the following:

I:      The trial court abused its discretion when it failed to grant [Lopez's] motion to
        withdraw his plea prior to sentencing.

II:     The court abused its discretion when it failed to rule on [Lopez's] renewed motion
        to vacate his plea prior to sentencing.

III:    [Lopez's] plea was not voluntary as the state continued to negotiate a better offer
        even after the plea agreement was put on the record.

IV:     [Lopez] was denied effective assistance of counsel when the first trial attorney
        failed to file a motion to withdraw [Lopez's] guilty plea.

V:      The sentencing of [Lopez] was improper because the Court is required to give
        reasons for the sentence when it has handed down consecutive sentences or a
        combination of sentences equal to the maximum for the most serious offense.

(Doc. #2 at 7).

        Respondent contends that Lopez committed a procedural default by failing to raise his

First through Fifth Grounds for Relief in a timely direct appeal in the Ohio Supreme Court. This

contention is well taken.

        Under Ohio procedural law, Lopez had forty-five days from the date of the Ohio Court of

Appeals' October 13, 2000 decision – or until November 28, 2000 – to file a direct appeal with

the Ohio Supreme Court. *See* Ohio S.Ct. R. II, §2(A)(1)(a). *See Bonilla*, 370 F.3d at 496. He

missed this deadline by several years, delaying until February 4, 2004 to file his *pro se* motion

for delayed direct appeal in the Ohio Supreme Court. *See* Doc. #9, Exhs. 24-26. Consequently,

Lopez committed a procedural default with regard to his First through Fifth Grounds for Relief,

which he raised in the Ohio Court of Appeals but failed to timely raise in the Ohio Supreme

Court.

This is the same procedural default committed by the petitioners in *Smith v. State of Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426, 432 (6th Cir. 2006) and in *Bonilla,* 370 F.3d at 497.  In *Bonilla*, the United States Court of Appeals for the Sixth Circuit explained:

> Bonilla failed to file a timely notice of appeal with the Ohio Supreme Court and his motion for leave to file a delayed appeal was denied by that court apparently because he failed to demonstrate adequate reasons for his failure to file a timely notice of appeal or to otherwise comply with the provisions of Ohio Sup. Ct. R. II, Section 2(A)(4).  Where a state court is entirely silent as to its reasons for denying requested relief, we assume that the state court would have enforced any applicable procedural bar.  *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).

370 F.3d at 497.  These reasons apply equally to the Ohio Supreme Court's decision regarding Lopez's untimely direct appeal.

To avoid this procedural default, Lopez asserts that the four-part test set forth in *Reynolds v. Berry*, 146 F.3d 345, 347 (6th Cir. 1998) and *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986) applies to determine if a procedural default has occurred.  This contention is well taken to the limited extent that Lopez correctly sets forth the main substance of the *Maupin* test, *see* Doc. #13 at 6, and correctly asserts *Maupin*'s continued validity.[5]  *See Buell v. Mitchell*, 274 F.3d 337, 348 and n.4 (6th Cir. 2001)  Yet, Lopez's contentions otherwise lack merit because the United States Court of Appeals for the Sixth Circuit has repeatedly held that the exact Ohio procedural rule he violated – not filing a timely direct appeal in the Ohio Supreme Court – constitutes an

---

[5]  The four *Maupin* inquiries are:  First, did the petitioner fail to comply with a state procedural rule.  Second, did the state courts actually enforce the state procedural rule.  Third, is the state procedural rule an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.  Fourth, has the petitioner shown both "cause" for not following the state procedural rule and that he was actually prejudiced by the alleged constitutional error.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763-64 (6th Cir. 2006); *see also Maupin*, 785 F.2d at 185.

adequate and independent state ground barring federal habeas review. *See Smith*, 463 F.3d at

432; *see also Bonilla*, 370 F.3d at 497. This Court is bound by the holdings in *Smith* and

*Bonilla*. *See Beverly Enterprises v. N.L.R.B.*, 727 F.2d 591, 593 (6th Cir. 1984)("The basic

doctrine that, until reversed, the dictates of a Court of Appeals must be adhered to by those

subject to the appellate court's jurisdiction applies..." to the district courts.).

Lopez further argues that *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), and certain similar

cases, created a "look through" policy requiring this court to look through the Ohio Supreme

Court's decision to reach the substance of the Ohio Court of Appeals' decision. By looking

through in this manner, Lopez sees no procedural bar to federal habeas review, because the Ohio

Court of Appeals reached the merits of his claims, and thus did not enforce a procedural bar.

Lopez's contentions and his reliance on *Ylst*, and similar cases, lack merit. *See Smith*,

463 F.3d at 432 n.3. Although lengthy, the Court of Appeals' reasoning in *Smith* is worth

repeating, since it rejected the same arguments Lopez raises in the present case and since Lopez

committed the same procedural default as Smith:

> Although the Ohio Supreme Court did not give any reasons for the denial
> of Smith's motion for a delayed appeal, given the type of motion at issue and the
> circumstances surrounding the decision, it is apparent that the grounds were the
> state procedural bar and not federal law. *See Ylst v. Nunnemaker,* 501 U.S. 797,
> 802-03 ... (1991). In *Ylst,* the Supreme Court instructed that when a federal court
> seeks to determine whether a state court's unexplained order rests on the merits of
> the federal claim, the federal court should look to 'clues' such as the 'nature of
> the disposition' and the 'surrounding circumstances.' *Id*. at 802.... When such
> clues are not available, the court should presume that when 'there has been one
> reasoned state judgment rejecting a federal claim, later unexplained orders
> upholding that judgment or rejecting the same claim rest upon the same ground.
> *Id.* at 803.... We need not apply the presumption here, however, because the
> nature of the motion before the Ohio Supreme Court and the surrounding
> circumstances make clear that the basis for the Ohio Supreme Court's decision
> was a state procedural ground. *See id*. at 802-03...; *Coleman,* 501 U.S. at 740....
> First, the decision was on a motion for delayed appeal – a procedural issue – and

not a general review. *See Coleman,* 501 U.S. at 740....  The rule governing the filing of such motions, Ohio Supreme Court Rule II § 2(A)(4)(a), only requires submission of a motion for delayed appeal setting forth 'the date of entry of the judgment being appealed' and 'adequate reasons for the delay,' as well as a notice of appeal, and *not* a brief supporting the merits of the underlying claims. Moreover, the memorandum in support of jurisdiction, which is required to accompany a claimed appeal of right or a discretionary appeal to the Ohio Supreme Court, is not to be filed until *after* the Ohio Supreme Court grants the motion for delayed appeal. *Id.* §2(A)(4)(c).  Therefore, Rule II §2(A)(4)(a) does not even appear to contemplate decisions on the merits of the claims raised in the underlying appeal.

Second, the Ohio Supreme Court order held 'that the motion for delayed appeal be, and hereby is, denied,' and 'accordingly, it is further ordered by the Court that this cause be, and hereby is, dismissed.'...[6]  This indicates that the Ohio Supreme Court denied the motion to file a delayed appeal involving a state procedure governing the submission of untimely appeals, and dismissed the case on this basis, and did *not* deny the appeal on the merits of the federal claims. *See Ylst,* 501 U.S. at 802....  Third, the Ohio Supreme Court's decision did not mention federal law. *See Coleman,* 501 U.S. at 740....  Finally, as in *Coleman,* the state's argument relied entirely on a procedural bar..., and Smith's argument relied only on reasons for the delay without mention of the merits of his claims.[7] *See Ylst,* 501 U.S. at 802...; *Coleman,* 501 U.S. at 740....  Because the Ohio Supreme Court's decision did not 'fairly appear to rest primarily on federal law, or to be interwoven with the federal law,' the Ohio Supreme Court did not need to state expressly its reliance on a state procedural bar for us to determine that the state procedural ground was the basis for its decision. *Coleman,* 501 U.S. at 735..., (internal quotation marks omitted); *see also Ylst,* 501 U.S. at 802....

*Smith*, 463 F.3d at 432 n.3 (footnotes 5 and 6 added).  This reasoning applies equally to Lopez's

*Ylst*-based arguments, and consequently, these arguments lack merit.

Lopez has not established cause or prejudice for his failure to file a timely direct appeal

in the Ohio Supreme Court, and he has not presented any information indicating that a

fundamental miscarriage of justice will result from the failure to consider the merits of these

---

[6]  The Ohio Supreme Court used identical language in denying Lopez's motion.  *See* Doc. #9, Exh. 27.

[7]  In Lopez's case, the state did not file a response to his motion for delayed appeal.  *See* Doc. #9, Exh. 26. Like Smith, however, Lopez based his motion on his explanation for the untimely filing, and did not address the merits of his claims.  *See* Doc. #9, Exh. 26.

claims.  *See* Doc. #13.

Accordingly, Lopez has waived his First through Fifth Grounds for Relief for purposes of federal habeas review.

**3.**
**Ohio's Contemporaneous Objection Rule**

Lopez's Sixth Ground for Relief asserts the following:

> [Lopez's] constitutional right to due process was violated [because] count[s] two and four of the indictment charging [Lopez] under conspiracy statute are insufficient to allege conspiracy since they state no specific overt-act in furtherance of the alleged conspiracy and both counts are fatally defective.

(Doc. #2 at 8).

Respondent contends that Lopez committed a procedural default with regard to this claim by not objecting in the trial court to the sufficiency of the indictment before entering his guilty pleas.  This contention is well taken.

When rejecting Lopez's Rule 26(B) Application (in July 2003), the Ohio Court of Appeals actually enforced its requirement that criminal defendants must challenge the sufficiency of the indictment by objecting in the trial court before pleading guilty.  The Ohio Court of Appeals explained as follows:

> In his second assignment of error, Lopez claims that the two conspiracy counts in the indictment were fatally defective because they stated no specific overt acts in furtherance of the conspiracy.  For the following reasons, we disagree.
>
> '[A] defendant who, prior to pleading guilty, fails to assert that the indictment is defective, waives any error in the indictment.'  *State v. Miller* (Oct. 2, 1996)..., 1996 Ohio App. LEXIS 4406, citing *State v. Rogers* (March 23, 1994)..., 1994 Ohio App. LEXIS 1270; *State v. Boysel* (Nov. 20, 1981)..., 1981 Ohio App. LEXIS 11928; Crim. R. 12(B)(2); and Crim. R. 12(G).  See, also, *State v. Culp* (1971), 32 Ohio App.2d 39, 288 N.E.2d 308.  Just as in the *Miller* case, Lopez does not allege that he was prevented from voluntarily entering his guilty

12

pleas, or that he did not knowingly, intelligently, and voluntarily enter those pleas.  Moreover, a criminal defendant may choose to waive his right to require an indictment by a grand jury.  Lopez's guilty pleas to the conspiracy charges served as a waiver of that right in this case.

Under different factual circumstances the outcome of this case might have been different.  In footnote 3, for example, the *Miller* Court points out that a no-contest plea would not have resulted in a waiver of the issue.  For the same reasons, *State v. Childs*, 88 Ohio St.3d 194..., is clearly distinguishable from the instant case in that Childs did not enter a guilty plea, but instead proceeded to trial.   Thus, but for Lopez's waiver as the result of his guilty pleas, he may have had a viable argument under *Childs*, supra.

Lopez's second assignment of error is overruled.

(Doc. #9, Exh. 1 at ¶s13-16).  A review of the cases cited by the Ohio Court of Appeals, as well as Ohio R. Crim. P. 12(B)(2) and 12(G), reveals that the Court of Appeals applied Ohio's contemporaneous objection rule to bar Lopez's challenge to the sufficiency of the indictment.  *See, e.g.*, *State v. Miller*, 1996 WL 571488 (4th Ohio App. 1996).  "Ohio's contemporaneous objection rule is an independent and adequate ground to foreclose relief absent a showing of cause and prejudice."  *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005)(citation omitted).  The actual enforcement of this adequate and independent state procedural rule to bar Lopez's Sixth Ground for Relief establishes that he committed a procedural default with regard to this claim.  *See Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *see also White*, 431 F.3d at 525.

Lopez has not established cause or prejudice for his failure to contemporaneously object to the indictment in the trial court before entering his guilty pleas, and he has not presented any information indicating that a fundamental miscarriage of justice will result from the failure to consider the merits of this claim.  *See* Doc. #13.

The Court notes that Lopez has been granted leave to submit additional case law and arguments in support of his Sixth Ground for Relief, and Respondent has opposed these

13

additional matters. (Doc. #s 22-24). However, Lopez's additional arguments and case law do not present any cause for his procedural default, *see* Doc. #22, and consequently, his procedural default bars a merits review of his reliance on this additional case law and his additional arguments.

Accordingly, Lopez has waived his Sixth Ground for Relief for purposes of federal habeas review.

**4.**
**Grounds Seven Through Nine**

Lopez raises the following claims in his Seventh through Ninth Grounds for Relief:

VII:     Counts two, four, and six of the indictment charging [Lopez] with conspiracy and kidnapping are fatally defective, since they fail to provide fair notice of the crimes against which he [Lopez] must defend.

VIII:    The trial court erred when it accepted [Lopez's] guilty plea and in finding him guilty.

Supporting facts:       [Lopez] asserts his plea was involuntary due to the defective indictment counts two, four, and six.

IX:      [Lopez's] guilty plea was not voluntary due to the prosecution's withholding of documents.

(Doc. #2 at 8).

Respondent contends that Lopez committed a procedural default by failing to raise these claims in his original direct appeal in the Ohio Court of Appeals, and by instead first raising them in his Rule 26(B) Application. This contention is well taken as to Lopez's Seventh and Eighth Grounds for Relief, but lacks merit as to his Ninth Ground for Relief.

The Ohio Court of Appeals actually enforced Ohio's contemporaneous objection rule to bar Lopez's Seventh and Eighth Grounds for Relief, which he raised in the Ohio Court of

14

Appeals as his second and third Assignments of Error.  The Ohio Court of Appeals explained

that it had rejected these same claims under a plain-error review in *State v. Bonilla*, and further

held, "By pleading guilty, Lopez waived any claim that he had insufficient notice of the charges

against him."  (Doc. #9, Exh. 14 at 4).

A review of *State v. Bonilla* reveals that Bonilla – like Lopez – did not

contemporaneously object in the trial court to the purported insufficiency of the indictment.

Consequently, the Ohio Court of Appeals reviewed Bonilla's challenge to the indictment for

plain error, and finding none, rejected this claim.  *See* Doc. #9, Exh. 15(C) (also available at

*State of Ohio v. Bonilla*, 2001 WL 236762 (2nd Ohio App., March 2, 2001)).  In Lopez's case, the

Ohio Court of Appeals' reliance on this plain error review and its specific holding that Lopez

waived his challenges to the sufficiency of the indictment demonstrates that it actually enforced

Ohio's contemporaneous objection rule to bar these claims.  *See* Doc. #9, Exh. 14 at 4-5.

Consequently, Lopez's failure to raise a contemporaneous objection to the sufficiency of the

indictment constitutes a procedural default as to his Seventh and Eighth Grounds for Relief.  *See*

*Keith v. Mitchell*, 455 F.3d 662, 673-74 (6th Cir. 2006) ("the Ohio Supreme Court's plain error

review does not constitute a waiver of the state's procedural default rules and resurrect the issue

for [the petitioner].").

Procedural default does not bar Lopez's Ninth Ground for Relief, which challenges the

voluntariness of his guilty plea based on the prosecution's withholding of documents.  The Ohio

Court of Appeals made no mention of a procedural bar to this claim.  Instead, the Court of

Appeals found that Lopez's appellate counsel did not provide ineffective assistance for failing to

assert that his guilty pleas were not knowing and voluntary based on the prosecution's

withholding of documents.  *See* Doc. #9, Exh. 14 at 5.  Because the Ohio Court of Appeals did

not actually enforce a procedural bar to this Ground for Relief, procedural default does not bar

federal habeas review of this claim on the merits.  *See Patterson v. Haskins*, 316 F.3d 596, 605

(6th Cir. 2003).

Lopez has not demonstrated any cause for his failure to contemporaneously object to the

sufficiency of the indictment as asserted in his Seventh and Eighth Grounds for Relief, and he

has shown no prejudice from his waiver of these claims.   He has also not presented any

information indicating that a fundamental miscarriage of justice will result from the failure to

consider the merits of these claims.  *See* Doc. #13.  Procedural default thus bars federal habeas

review of these Grounds for Relief.

Accordingly, Lopez has waived his Seventh and Eighth Grounds for Relief but has not

waived his Ninth Ground for Relief, for purposes of federal habeas review.  As noted previously,

Respondent does not contend that Lopez's Tenth Ground for Relief is procedurally barred.  The

analysis therefore turns next to the merits of Lopez's Ninth and Tenth Grounds for Relief.

> **B.      Guilty Pleas, *Brady v. Maryland*, and**
> **Ineffective Assistance of Appellate Counsel**

**1.**
**Lopez's Claims and**
**The Ohio Court of Appeals' Decision**

As stated above, Lopez's Ninth Ground for Relief challenges the prosecution's

withholding of documents.  To support this claim Lopez relies on his Rule 26(B) Application,

*see* Doc. #13 at 15, which claimed that his appellate counsel provided ineffective assistance by

not challenging the validity of his guilty pleas based on the prosecution's withholding of the trial

16

transcript from Bonilla's trial. (Doc. #9, Exh. 12(B) at 6-8). In support of this claim, Lopez

relied in part on *Maryland v. Brady*, 373 U.S. 83 (1963). *See id*. at 8.

 The Ohio Court of Appeals rejected this claim as follows:

> As the State notes, Lopez's argument in support of this assignment of
> error is based upon the transcript of the trial of his co-defendant Eduardo Bonilla.
> The transcript of Bonilla's trial is not part of the record in Lopez's appeal, and his
> appellate counsel could not have relied upon the transcript in support of Lopez's
> appeal. Accordingly, Lopez's appellate counsel was not ineffective for having
> failed to assert Lopez's proposed Fourth Assignment of Error.

(Doc. #9, Exh. 14 at 5).

## 2.
## The AEDPA

 In 1867 Congress extended to the federal courts the power to grant a Writ of Habeas

Corpus when a person "is in custody in violation of the Constitution or laws or treaties of the

United States...." 28 U.S.C. §2241(c)(3); *see Williams v. Taylor*, 529 U.S. 362, 374 (2000).

 In 1996 Congress enacted the AEDPA "dramatically alter[ing] the landscape for federal

habeas corpus petitions." *Rhines v. Weber*, 544 U.S. 269, 274 (2005). "AEDPA 'requires

heightened respect for state court factual and legal determinations.'" *Fulcher v. Motley*, 444

F.3d 791, 824 (6th Cir. 2006)(citation omitted).

 Under the AEDPA, codified in part at 28 U.S.C. §2254(d), "a petitioner is not entitled to

relief in a federal habeas corpus proceeding unless the state court's adjudication of his or her ...

claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of,

clearly established federal law as determined by the United States Supreme Court, or (2) was

based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding." *Arnett v. Jackson*, 393 F.3d 681, 685 (6th Cir. 2005).

The AEDPA thus creates two categories of cases in which a state prisoner may gain federal habeas relief. *Millender v. Adams*, 376 F.3d 520, 523 (6th Cir. 2004). In the first category, involving state decisions contrary to federal law, the petitioner "must show that the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or that the state court decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Millender*, 376 F.3d at 523.

> Under the second category, involving the unreasonable application of federal law by a state court, a federal habeas court must ask whether the state court's application of clearly established federal law was objectively reasonable. If the federal court finds that, viewed objectively, the state court has correctly identified the governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case, it may grant the writ.

*Id*. (citation omitted). An objectively unreasonable application of clearly established federal law is different from an incorrect one. *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see Arnett*, 393 F.3d at 685. A "state court's application of federal law is unreasonable and habeas relief may be granted if the 'state court decision is so clearly incorrect that it would not be debatable among reasonable jurists.'" *Joshua v. DeWitt*, 341 F.3d 430, 436 (6th Cir. 2003)(citation omitted). When conducting this reasonableness inquiry, the AEDPA prohibits granting a Writ of Habeas Corpus based on a federal court's *de novo* review of a state-court decision. *Price v. Vincent*, 538 U.S. 634, 639 (2003); *see Joshua*, 341 F.3d at 436; *see also Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003).

Lastly, the phrase "clearly established federal law..." in 28 U.S.C. §2254(d)(1), "refers to the holdings, as opposed to the dicta, of this [United States Supreme] Court's decision." *Carey v. Musladin*, __ U.S.__, __, 2006 WL 3542769 at *3 (December 11, 2006) (quoting *Williams*,

529 U.S. at 412).

### 3.
### <u>Analysis</u>

Whether considered as a claim for ineffective assistance of appellate counsel or a claim that his guilty pleas were not knowing and voluntary due to the violation of *Brady v. Maryland*, Lopez's Ninth Ground for Relief lacks merit.

To establish a *Brady* violation, a petitioner "must establish (1) that the evidence was favorable to him, (2) that it was suppressed (whether intentionally or not) by the government, and (3) that prejudice ensued....  The prejudice (or materiality) element of a *Brady* violation is established if there is a reasonable probability of a different outcome of the trial had the *Brady* material been available."  *Jamison v. Collins*, 291 F.3d 380, 385 (6th Cir. 2002) (citing *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999)).

Lopez's *Brady* claim fails because the transcript of Bonilla's trial was a matter of public record, rather than exculpatory evidence withheld by the prosecution.  *See Byrd v. Collins*, 209 F.3d 486, 513 (6th Cir. 2000) (no *Brady* violation where petitioner did not seek evidence through a public-records request under Ohio law).  Because the transcript of Bonilla's trial was a public record, any information in the transcript that was exculpatory to Lopez constituted facts he knew or should have known once the transcript came into being.  "[N]o *Brady* violation occurs 'where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source.'"  *Byrd*, 209 F.3d at 517.

In addition, a review of the appellate brief filed by Lopez's attorney on direct appeal confirms that he was not provided constitutionally ineffective assistance of counsel.  Appellate

counsel raised five assignments of error four of which challenged the validity of his guilty pleas under both Ohio law and the United States Supreme Court.  *See* Doc. #9, Exh. 9.  Although the Ohio Court of Appeals found no merit to these claims, Lopez's appellate counsel presented them in a well-written, cogent brief, which contained meaningful analysis buttressed by many citations to the trial record and to pertinent case law.  *See id*.  Appellate counsel, moreover, convinced the Ohio Court of Appeals that Lopez's challenge to his sentence, his fifth assignment of error, was well taken and obtained a remand to the trial court for resentencing.  Given this partial success on appeal, along with the high quality of appellate counsel's representation of Lopez on direct appeal, the omission of (or decision not to raise) an additional *Brady*-based challenge to his guilty pleas did render counsel's performance constitutionally deficient.  *See Whiting v. Burt*, 395 F.3d 602, 616 (6th Cir. 2005)(listing factors).

Accordingly, Lopez's Ninth Ground for Relief lacks merit.

## C.     Article 36 of the Vienna Convention

### 1.
### Lopez's Claims and
### the Ohio Court of Appeals' Decision

Lopez contends in his Tenth Ground for Relief that the trial court violated his rights under Article 36 of the Vienna Convention on Consular Relations by failing to inform him of his right to consult with a representative from the Mexican consulate, who speaks the same language as Lopez.

The Ohio Court of Appeals rejected this claim on July 25, 2003.  (Doc. #9, Exh. 1).  In doing so, the Ohio Court of Appeals explained in part as follows:

Article 36 of the Vienna Convention requires a government that arrests,

imprisons, or detains a foreign national to inform him of his right to contact his consulate....   However, rights under an international treaty, like rights under a federal statute, are not the equivalent of constitutional rights.....

Furthermore, the United States Supreme Court has left open the issue of whether Article 36 of the Vienna Convention on Consular Relations creates individual rights that are judicially enforceable....  According to the State Department, the only remedies for failure of consular notification under the Vienna Convention are diplomatic, political, or exist between states under international law....

(Doc. #9, Exh. 1 at 2)(internal citations and punctuation omitted).

### 2.
### Analysis

The Ohio Court of Appeals' rejection of Lopez's claim under the Vienna Conviction was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  The Ohio Court of Appeals correctly recognized that rights under an international treaty are, in general, not equivalent of federal constitutional rights.  *See Reid v. Covert*, 354 U.S. 1, 17-18 (1957); *see, e.g., Boos v. Barry*, 485 U.S. 312 (1988).  This holding did not conflict with any holding by the United States Supreme Court at the time of the Ohio Court of Appeals' decision, a conclusion supported by the Supreme Court's recent decision in *Sanchez-Llamas v. Oregon*, __ U.S.__, 126 S.Ct. 2669 (June 28, 2006).  In *Sanchez-Llamas*, the Supreme Court declined to resolve the specific issue of whether Article 36 of the Vienna Convention grants rights to an individual criminal defendant, 126 S.Ct. at 2677, thus confirming that this specific issue was not clearly resolved at the time of the Ohio Court of Appeals' decision.

Further confirmation of the unsettled nature of this issue exists in the conflict among the various circuits of the United States Courts of Appeals.  The United States Court of Appeals for

21

the Sixth Circuit has determined, "Significantly, the Supreme Court has twice held that the Vienna Convention does not provide a signatory nation a private right of action in the federal courts to seek a remedy for a violation of Article 36. *Federal Republic of Germany v. United States,* 526 U.S. 111, 111-12... (1999)(per curiam); *Breard,* 523 U.S. at 377....[8]  If a foreign sovereign to whose benefit the Vienna Convention inures cannot seek a judicial remedy, we cannot fathom how an individual foreign national can do so in the absence of express language in the treaty."  *United States v. Emuegbunam,* 268 F.3d 377, 394 (6th Cir. 2001)(footnote added). The Court of Appeals for the Seventh Circuit specifically rejected *Emuegbunam,* holding instead, "Article 36 confers individual rights on detained nationals."  *Jogi v. Voges,* 425 F.3d 367, 382 (7th Cir. 20005).

Thus, at the time of the Ohio Court of Appeals' July 2003 decision, the issue of whether Article 36 of the Vienna Convention created judicially enforceable rights for criminal defendants was the subject of conflicting holdings by the Courts of Appeals of the United States, a conflict still unresolved by the United States Supreme Court.  *See Sanchez-Llamas,* __ U.S. at __, 126 S.Ct. at 2677.  Without a holding by the United States Supreme Court supporting the existence of the rights Lopez asserts under Article 36 of the Vienna Convention, the Ohio Court of Appeals' decision was neither contrary to nor an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  *See Spisak v. Mitchell,* 465 F.3d 684, 690 (6th Cir. 2006)(The AEDPA inquiry is "limited to an examination of the legal landscape as it would have appeared to the ... state courts in light of Supreme Court precedent at the time [the defendant's] conviction became final.").

---

[8] *Breard v. Greene*, 523 U.S. 371 (1998).

22

Accordingly, Lopez's Tenth Ground for Relief lacks merit.

## IV.    CERTIFICATE OF APPEALABILITY

Before Lopez may appeal a denial of his habeas petition, he must first obtain a certificate of appealability.  28 U.S.C. §2253(c)(1)(A).  To obtain a certificate of appealability when a habeas petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

If the District Court dismisses the petition on procedural grounds without reaching the merits of the constitutional claims, the petitioner must show that jurists of reason would find it debatable whether the District Court is correct in its procedural ruling.  *Slack*, 529 U.S. at 484. The procedural issue should be decided first so as to avoid unnecessary constitutional rulings. *Slack*, 529 U.S. at 485 (citing *Ashwander v. TVA*, 297 U.S. 288, 347 (1936)(Brandeis, J., concurring)).

The conclusions that Lopez has waived his First through Eighth Grounds for Relief for purposes of federal habeas corpus review due to his procedural defaults, that he has not shown cause or prejudice for his procedural defaults, and that he has not made a colorable showing of a miscarriage of justice are not debatable by jurists of reason.  The conclusions that Lopez's Ninth and Tenth Grounds for Relief lack merit are not debatable among reasonable jurists.  Lopez's Petition and Traverse, his contentions raised therein, and the record as a whole do not otherwise

23

present issues adequate to deserve encouragement to proceed further.  Consequently, a certificate

of appealability should not issue.

**IT IS THEREFORE RECOMMENDED THAT:**

1.      Miguel Steven Virruela Lopez's Petition for Writ of Habeas Corpus (Doc. #2) be
        DENIED and DISMISSED;

2.       A certificate of appealability under 28 U.S.C. §2253(c) not issue; and

3.      The case be terminated on the docket of this Court.


December 15, 2006

                                          _____s/ Sharon L. Ovington_____
                                               Sharon L. Ovington
                                          United States Magistrate Judge

24

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).